United States District Court
Middle District of Florida
Tampa Division

**MASTER ALEXANDRE ZII MILLER,**

    *Plaintiff,*

v.   NO. 8:20-cv-2040-PDB

**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

___

# Order

Master Alexandre Zii Miller challenges a final decision by the Acting Commissioner of Social Security denying applications for child's insurance benefits and supplemental security income. Doc. 1. Miller proceeds under 42 U.S.C. §§ 405(g) and 1383(c)(3).

The decision under review is a decision by an administrative law judge (ALJ) signed on June 5, 2020. Tr. 15–32. The procedural history, record evidence, and law are summarized in the ALJ's decision and the parties' briefs and not fully repeated here. *See* Tr. 17–30; Docs. 22, 24. Miller argues the ALJ erred in evaluating opinions of two psychiatrists. Doc. 22 at 6–10.

A court's review of a decision by the Acting Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3) (incorporating § 405(g)); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v.*

*Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted). The "threshold for such evidentiary sufficiency is not high." *Id*.

Miller was born in 1996. Tr. 272. Miller applied for benefits on November 30, 2018, alleging disability beginning on February 14, 2012. Tr. 272–79. Miller amended the date to November 15, 2016, the day after a previous unfavorable decision. Tr. 15.

The ALJ found Miller has severe impairments of benign hypermobility syndrome, depression, anxiety/panic disorder, attention-deficit hyperactivity disorder, and post-traumatic stress disorder. Tr. 18. The ALJ found Miller has the residual functional capacity to perform light work with additional limitations: Miller can never climb ladders, ropes, or scaffolds; Miller can only occasionally climb ramps and stairs and kneel, crouch, and crawl; Miller should avoid concentrated exposure to workplace hazards; and Miller can perform only unskilled work tasks not exceeding reasoning level 2. Tr. 21. The ALJ found Miller can perform jobs existing in significant numbers in the national economy and thus is not disabled. Tr. 30–31.

The ALJ evaluated several medical opinions. The ALJ found persuasive opinions of Dr. Janet Anguas-Keiter, Dr. Bradley Stephen, Dr. Peter Kaplan, and Dr. Michael Rosenberg. Tr. 27–28. The ALJ found "somewhat persuasive" opinions of Dr. David Clay, Dr. Zaheer Aslam, Dr. Gregory Barrow, and Dr. Gary Savill. Tr. 27–29. The ALJ found some opinions of Dr. Camille Baptiste-Smith persuasive and some "somewhat unpersuasive." Tr. 27–28. The ALJ found "minimally persuasive" opinions of Licensed Clinical Social Worker Clifford Hoberman. Tr. 29.

Miller challenges only the ALJ's evaluation of Dr. Aslam's and Dr. Barrow's opinions. *See generally* Doc. 22.

2

Dr. Aslam wrote a letter dated February 22, 2019. Tr. 672. Dr. Aslam opined that Miller's recurrent major depressive disorder, PTSD, and panic attack disorder prevent Miller from focusing on "even small tasks" and the unpredictability of Miller's "derealization" prevents Miller from being able to drive or work. Tr. 672.

Dr. Aslam completed a "Mental Impairment Questionnaire" dated September 5, 2019. Tr. 540–43. Dr. Aslam explained he has seen Miller once every three months since 2013. Tr. 540. Dr. Aslam stated Miller has PTSD, panic attacks, and major depression. Tr. 540. Dr. Aslam opined Miller's depressive disorder causes depressed mood, diminished interest in almost all activities, sleep disturbance, decreased energy, and difficulty concentrating or thinking. Tr. 540. Dr. Aslam opined Miller's anxiety disorder causes easy fatigue, difficulty concentrating, irritability, muscle tension, and sleep disturbance. Tr. 541. Dr. Aslam opined Miller's panic disorder causes disproportionate fear or anxiety and "[p]anic attacks followed by a persistent concern or worry about additional panic attacks or their consequences." Tr. 541. Dr. Aslam opined Miller's trauma and stressor-related disorder causes "[a]voidance of external reminders of the event," "[d]isturbance in mood and behavior," and "[i]ncreases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance)." Tr. 541. Asked to "[d]escribe the *clinical findings* including results of mental status examination which demonstrate the severity of [Miller's] mental impairment and symptoms," Dr. Aslam wrote, "At this time the patient is unable to function at a job due to increasing disassociation." Tr. 542. Dr. Aslam opined Miller's impairments are reasonably consistent with the symptoms and limitations described. Tr. 542. Dr. Aslam opined Miller's prognosis is "poor." Tr. 542. Dr. Aslam opined Miller's impairments or treatment would cause Miller to miss work more than three times a month. Tr. 542. Dr. Aslam opined Miller would have difficulty working

3

at a regular job on a sustained basis "[d]ue to the panic attacks and anxiety at this time," which are "occurring several times a week." Tr. 542. Dr. Aslam opined Miller would have "moderate" limitations in understanding, remembering, or applying information and in adapting and managing oneself and marked limitations in interacting with others and concentrating, persisting, or maintaining pace. Tr. 543.

In finding Dr. Aslam's opinions only "somewhat persuasive," the ALJ explained:

> I find the opinions of Dr. Zaheer Aslam somewhat persuasive; however, I find the claimant less limited based on the overall evidence received at the hearing level (Exhibits B12F; B22F). Dr. Aslam did not have the benefit of reviewing all the evidence received at the hearing level prior to making the opinions. Therefore, the opinions are not reflective of the totality of the evidence. Notably, many of Dr. Aslam's suggested limitations are extreme in nature and scope and simply unsupported by his objective mental-status findings and other objective evidence in the longitudinal medical record as discussed in the narrative summary above. Specifically, I note that Dr. Aslam's suggestion that the claimant has multiple marked limitations and is unable to drive or work is inconsistent with the full record, which demonstrates that he has a valid state driver's license and occasionally drives, in addition to the claimant's admissions at the hearing, which demonstrates that he has worked about a dozen different jobs over the years for family and friends, including cleaning vacation rental properties, although has never officially been employed. To the contrary, and as discussed extensively above, the claimant routinely performs a wide range of daily activities consistent with light unskilled work such as preparing meals, shopping for household and personal items at the store and by computer, completing household chores, communicating with others via phone and email, communicating with friends online and on social media, using his own credit card to buy plane tickets, counting change, reading books and periodicals, playing card games, swimming weekly at LA Fitness Club, traveling independently both domestically and internationally, and regularly interacting with friends, family, and other members of the community.

Tr. 28–29.

4

Dr. Barrow completed a "Mental Impairment Questionnaire" dated January 20, 2020. Tr. 558–61.

Dr. Barrow explained he has seen Miller every month since August 8, 2017. Tr. 558. Dr. Barrow stated Miller has panic disorder, generalized anxiety disorder, and recurrent major depression. Tr. 558. Dr. Barrow opined Miller's depressive disorder causes depressed mood, diminished interest in almost all activities, sleep disturbance, decreased energy, and difficulty concentrating or thinking. Tr. 558. Dr. Barrow opined Miller's anxiety disorder causes restlessness, easy fatigue, difficulty concentrating, irritability, and sleep disturbance. Tr. 559. Dr. Barrow opined Miller's panic disorder causes disproportionate fear or anxiety and "[p]anic attacks followed by a persistent concern or worry about additional panic attacks or their consequences." Tr. 559. Asked to "[d]escribe the *clinical findings* including results of mental status examination which demonstrate the severity of [Miller's] mental impairment and symptoms," Dr. Barrow wrote, "mood anxious, depressed, poor concentration and attention, affect flat." Tr. 560. Dr. Barrow opined Miller's impairments are reasonably consistent with the symptoms and limitations described. Tr. 560. Dr. Barrow opined Miller's prognosis is "poor." Tr. 560. Dr. Barrow opined Miller's impairments or treatment would cause Miller to miss work more than three times a month. Tr. 560. Dr. Barrow opined Miller would have difficulty working at a regular job on a sustained basis because of "poor sleep leading to poor concentration and attention [and] problems staying on task." Tr. 560. Dr. Barrow opined Miller would have mild limitations in interacting with others; moderate limitations in adapting or managing oneself; and marked limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace. Tr. 561.

5

In finding Dr. Barrow's opinions only "somewhat persuasive," the ALJ explained:

> I find the opinions of Dr. Gregory Barrow somewhat persuasive; however, I find the claimant less limited based on the overall evidence received at the hearing level (Exhibit B15F). Dr. Barrow did not have the benefit of reviewing all the evidence received at the hearing level prior to making the opinions. Therefore, the opinions are not reflective of the totality of the evidence. Notably, many of Dr. Barrow's suggested limitations are extreme in nature and scope and simply unsupported by his treatment notes and other objective evidence in the longitudinal medical record as discussed in the narrative summary above. Specifically, I note that Dr. Barrow's suggestion that the claimant has multiple marked limitations and would consistently miss more than 3 days of work a month due to his psychological conditions is inconsistent with the full record, which demonstrates largely benign mental status-findings throughout his course of treatment from several different mental health providers. To the contrary, and as discussed extensively above, the claimant routinely performs a wide range of daily activities consistent with light unskilled work such as preparing meals, shopping for household and personal items at the store and by computer, completing household chores, communicating with others via phone and email, communicating with friends online and on social media, using his own credit card to buy plane tickets, counting change, reading books and periodicals, playing card games, swimming weekly at LA Fitness Club, traveling independently both domestically and internationally, and regularly interacting with friends, family, and other members of the community.

Tr. 29.

Dr. Aslam and Dr. Barrow completed the same forms less than five months apart and offered differing opinions. *See generally* Tr. 28–29. For example, Dr. Aslam stated Miller has PTSD and resulting symptoms, Tr. 540–41, while Dr. Barrow said nothing about PTSD or resulting symptoms, *see generally* Tr. 558–61. Dr. Aslam opined Miller's anxiety disorder causes easy fatigue, difficulty concentrating, irritability, muscle tension, and sleep disturbance, Tr. 541, while Dr. Barrow opined the disorder causes restlessness as well but not muscle tension, Tr. 559. Dr. Aslam opined Miller will have

6

difficulty working at a regular job on a sustained basis "[d]ue to the panic attacks and anxiety at this time," which are "occurring several times a week," Tr. 542, while Dr. Barrow opined Miller will have difficulty because of "poor sleep leading to poor concentration and attention [and] problems staying on task," Tr. 560. In the area of understanding, remembering, or applying information, Dr. Aslam opined Miller would have moderate limitations, Tr. 543, while Dr. Barrow opined Miller would have marked limitations, Tr. 561. In the area of interacting with others, Dr. Aslam opined Miller would have marked limitations, Tr. 543, while Dr. Barrow opined Miller would have mild limitations, Tr. 561.

In 2017, the Social Security Administration (SSA) revised its medical evidence rules. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). The revisions include redefining terms related to evidence; revising how the agency considers medical opinions and prior administrative medical findings; and revising rules about treating sources, acceptable medical sources, and medical and psychological consultants. *Id.* The final rules became effective on March 27, 2017. *Id.* They apply here.

The SSA no longer uses the term "treating source" and will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the SSA will evaluate the persuasiveness of a medical opinion from a medical source considering, as appropriate, "(1) supportability; (2) consistency; (3) relationship with the claimant, which includes (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining

7

relationship; (4) specialization; and (5) other factors." *Id.* §§ 404.1520c(a) & (c)(1)–(5), 416.920c(a) & (c)(1)–(5).

Supportability and consistency "are the most important factors" in determining the persuasiveness of a medical source's medical opinion or prior administrative findings. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). Because they are the most important factors, the SSA will explain in the decision "how [it] considered the supportability and consistency factors for a medical source's medical opinions." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

As to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, the ALJ followed the new regulations by explaining how she considered supportability and consistency, and substantial evidence supports the ALJ's findings. Although Dr. Aslam and Dr. Barrow opined Miller has marked limitations, treatment notes show that, despite a depressed and anxious mood, Miller had full orientation, good eye contact, normal hygiene, normal psychomotor behavior, normal speech, organized thought process, fair judgment, no delusions or hallucinations, no suicidal or homicidal ideations, fair attention, normal recent/remote memory, an adequate fund of knowledge, intact insight/judgment, and intact impulse control. Tr. 24, 28, 29; *see* Tr. 410,

8

414–22, 434, 436, 438, 440, 442, 444, 446, 489, 491, 493, 495, 497, 499, 501, 503, 563. Although Dr. Aslam opined that Miller could not drive, Tr. 672, Miller reported driving occasionally, Tr. 64–65. Tr. 28. Miller also "routinely performs a wide range of daily activities consistent with light unskilled work[.]" Tr. 28, 29. Miller could shop for household and personal items at the store and by computer, cook simple meals, clean counters and tables, communicate with friends online, use social media, use a credit card to buy plane tickets, count change, read, play card games, draw, swim weekly at LA Fitness Club, and travel independently domestically and internationally (including trips to Japan in 2015 and 2017 to visit friends Miller met online).Tr. 28, 29; *see* Tr. 56–59, 64–65, 67–68, 331–32, 420, 421, 481. This evidence amounts to substantial evidence to support the ALJ's findings.

Miller emphasizes repeated reports of "poor energy, fatigue, tiredness, and poor concentration." Doc. 22 at 7–8 (citing Tr. 434, 436, 438, 440, 444, 489, 491, 527–28, 533, 563, 570). Miller adds, "Although not noted in the decision or the treatment notes, the claimant is taking medication which have common side effects, including tiredness, weakness, and difficulty sleeping. These medications include Anastrozole, Xanax, Prozac, and Mirtazapine." Doc. 22 at 8–9. Miller continues, "In addition, the claimant has been noted to be extremely underweight. Although a medical condition such as anorexia or a gastrointestinal disorder was not given as a cause for the claimant's emaciated condition, this condition cannot be ignored as contributing to the claimant's symptoms." Doc. 22 at 9.

Miller establishes no reversible error. Miller points to no record evidence that he experiences negative side effects from the medications or that being underweight caused problems. In any event, Miller's reports of symptoms that can be caused by the medications and being underweight does not undermine

that substantial evidence supports the ALJ's finding that Dr. Aslam's and Dr. Barrow's opinions are not supported by, or are inconsistent with, the totality of the evidence, including the many activities Miller could perform.

Miller argues the ALJ failed to address how the activities contradict the opinions about the extreme fatigue and sleep disturbance. Doc. 22 at 9. Miller contends that "the ability to perform activities some of the time, does not translate to the ability to perform work activities eight hours a day, five days a week, on a consistent basis." Doc. 22 at 10. But, as the Acting Commissioner contends, Miller's "daily activities need not in and of themselves prove [Miller] can sustain work activity for the ALJ to rely on them to evaluate [the] doctors' statements." Doc. 24 at 15. That Miller drove and performed simple tasks contradicts Dr. Aslam's opinion Miller could not drive and could not focus on even simple tasks, making the opinion less persuasive. That Miller interacted and got along with others contradicts Dr. Aslam's opinion Miller has marked limitations in interacting with others, making the opinion less persuasive. That Miller traveled alone internationally contradicts Dr. Barrow's opinion Miller has marked limitations understanding, remembering and applying information, making the opinion less persuasive.

Miller argues that considering the "nature" of the conditions, that Miller "was not manifesting symptoms at the time of the doctor's appointment, does not belie … statements to the psychiatrist regarding [the] symptoms." Doc. 22 at 10. Miller continues, "The psychiatrist was prescribing a number of medication[s] and referred the claimant for a sleep study. It is apparent that the psychiatrist believed the claimant's subjective complaints were genuine." Doc. 22 at 10. But whether Miller's symptoms varied and whether the doctors believed Miller's subjective complaints were genuine are not the issues. That Miller's examinations were consistently normal or fair in the areas of thought,

10

judgment, psychomotor behavior, memory, and attention undermine opinions that Miller has marked limitations. *See* Tr. 410, 414–22, 434, 436, 438, 440, 442, 444, 446, 489, 491, 493, 495, 497, 499, 501, 503, 563.

Miller argues "[a]n ALJ cannot discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's subjective allegations. Mental health professionals frequently rely on the combination of their observations and the patient report of symptoms." Doc. 22 at 10. Contrary to Miller's argument, the ALJ discounted the opinions as inconsistent with the objective medical evidence and Miller's activities of daily living. *See* Tr. 28–29.

The Court **affirms** the Acting Commissioner's decision and directs the clerk to enter judgment for the Acting Commissioner and against Master Alexandre Zii Miller and close the file.

**Ordered** in Jacksonville, Florida, on March 29, 2022.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

11